# IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
### TALLAHASSEE DIVISION

**SAMUEL CHRISTOPHER GOLDEN,**
**# 093265,**

> **Plaintiff,**

**vs.**                                          **Case No.  4:23cv396-AW-MAF**

**RICKY DIXON,**
**MARK S. INCH,**
**ERROL FELDMAN,**
**and ROBERT E. PICKENS,**

> **Defendants.**

_____/

## <u>REPORT AND RECOMMENDATION</u>

Plaintiff filed a civil rights complaint against four Defendants, ECF No. 1, concerning the termination of a digital music player program and the institution of a new multimedia tablet program.  The new program resulted in the loss of Plaintiff's tablet.  Plaintiff brings claims under the Takings Clause, the Substantive Due Process Clause, and asserts a conspiracy claim.  _Id._ at 12-13.  Plaintiff paid the filing fee for this case, ECF No. 4, and an Order was entered directing service on November 7, 2023.  ECF No. 9.  The United States Marshals Service [USMS] was directed to serve

the complaint on Plaintiff's behalf pursuant to Rule 4(c)(3) of the Rules of

Civil Procedure and Local Rule 4.1(B).  *Id.*

Initially, service was only returned executed for current Department of

Corrections Secretary, Ricky D. Dixon.  ECF No. 11.  As for the other three

Defendants (former Secretary Mark S. Inch; President of JPay, Inc., Errol

Feldman; and CEO of JPay, Inc., Robert E. Pickens), the USMS filed a

notice on December 15, 2023, advising that the Defendants had not

returned the waiver of service forms mailed to them on November 6, 2023.

ECF No. 12.  Accordingly, another service Order was entered on

December 20, 2023, redirecting service of process on those three

Defendants.  ECF No. 13.

A week later, Defendant Inch filed a waiver of service, ECF No. 16,

signed on December 15, 2023.  Counsel for both Defendants (Dixon and

Inch) then filed a motion to dismiss, ECF No. 26, on January 30, 2024.

Plaintiff was directed to respond to that motion, ECF No. 27, and his

response was timely filed on February 29, 2024.  ECF No. 29.

Meanwhile, executed summons were returned on January 4, 2024,

for Defendant Feldman, ECF No. 18, and Defendant Pickens, ECF No. 19.

A separate notice of appearance was filed, ECF No. 22, along with a

Case No. 4:23cv396-AW-MAF

motion to quash service of process, ECF No. 23.  Plaintiff was directed to respond to that motion, ECF No. 24, which he did on February 20, 2024. ECF No. 28.  This Report and Recommendation deals with both motions.

**Motion to Quash, ECF No. 23**

Defendants Feldman and Pickens point out that Plaintiff's claims against them were brought in their individual capacities.[1]  ECF No. 23 at 1. Further, Defendants note that the "summonses issued were for personal service upon individuals."  *Id.*  Defendants state that the USMS "attempted to serve the summonses" by serving the Defendants at an address for JPay, Inc.  *Id.*  However, because that address was a Post Office Box, the USMS left a card requesting a telephone call.  ECF No. 23 at 1.[2]

Defendants submitted the affidavit of Cynthia Strickland, an employee of JPay, LLC, with the motion  ECF No. 23-1 at 1.  She works in the legal department and, among other things, was responsible for the

---

[1] Review of the complaint reveals that Plaintiff sued Defendant Dixon in his official capacity, but sued Defendants Inch, Feldman, and Pickens in their individual capacities. ECF No. 1 at 3-5.

[2] The returned summonses include a statement by the Deputy U.S. Marshal that the address provided (12864 Biscayne Blvd. in Miami) was a mailing address only - P.O. Box.  The Marshal stated: "left business card and legal specialist called me and accepted service via email.  Confirmed receipt."  ECF Nos. 18, 19.

"receipt, organization and distribution of mail and other legal documents." *Id.* at 1-2. She sometimes was requested to "sign for receipt of various mail and other papers delivered to JPay's legal department." *Id.* at 2. However, she said that she has "never been appointed as an agent by either Errol Feldman or Robert Pickens, and" is "not authorized to act on their behalf in any way or accept any papers on their behalf." *Id.* at 2.

Strickland confirmed that on January 3, 2024, she was provided a business card of a Deputy United States Marshal by a mail courier; the card was apparently "received in JPay's P.O. mailing box . . . ." ECF No. 23-1 at 2. Upon receipt of the business card, Strickland called the deputy who said "he had legal papers for JPay and inquired as to JPay's address." *Id.* She provided the office address, but the deputy indicated he could not arrive there during business hours that day. *Id.* She provided him with an email address where he could send copies of the papers, and Strickland received the papers via email. *Id.* at 2-3. Strickland emphasizes that at no time did she ever indicate that she was "authorized to accept service of legal papers for JPay or any named individual." *Id.* at 3.

Strickland further states that Defendant Feldman was employed by JPay until approximately May 1, 2018. ECF No. 23-1 at 3. She has had no

contact with him since his separation and has no "forwarding information"

for Defendant Feldman.  *Id.*  She also has no such information for

Defendant Pickens who separated from his employment with JPay on or

about December 21, 2021.  *Id.*

Defendants argue that because the claims were brought against

them in their individual capacities, the Rules of Civil Procedure require that

they be served individually.  ECF No. 23 at 2.  Because service was carried

out through a corporate entity which was "not authorized to accept service

on their behalf," Defendants were not properly served.  *Id.*  Defendants

request that service of process be quashed.  *Id.* at 4.

In response to the motion to quash, Plaintiff points out that this Court

directed the USMS to serve the complaint on his behalf.  ECF No. 28 at 1.

In particular, Plaintiff notes that both of the service Orders entered in

November and December 2023 directed the USMS to "personally serve"

Defendants Feldman and Pickens.  *Id.* at 1-2.  Plaintiff states that as a

state prisoner, he is unable to personally contact the persons involved to

ascertain the facts about service.  *Id.* at 3.  He also says that he does not

"remotely believe that any member of the USMS would defy a[n] Order of

this Court."  *Id.* at 2.

Case No. 4:23cv396-AW-MAF

Because waivers of service were not received, the December 2023

Order entered in this case stated: "No later than January 9, 2024, the

USMS shall personally serve Defendants **Inch, Feldman,** and **Pickens**

with copies of the complaint, ECF No. 1, and summons pursuant to Federal

Rule of Civil Procedure 4(e)."  ECF No. 13 at 3.  The Order stated that

"[s]ervice should be attempted at the addresses listed by Plaintiff[3] within

the complaint."  ECF No. 13 at 3 (citing to ECF No. 1 at 4-5).

Service of process is governed by Rule 4 of the Federal Rules of Civil

Procedure.  Rule 4(e) governs service on an individual.  It provides:

> Unless federal law provides otherwise, an individual—other
> than a minor, an incompetent person, or a person whose waiver
> has been filed—may be served in a judicial district of the United
> States by:
>
>> (1) following state law for serving a summons in an
>> action brought in courts of general jurisdiction in the
>> state where the district court is located or where
>> service is made; or
>>
>> (2) doing any of the following:
>>
>>> (A) delivering a copy of the summons and of the
>>> complaint to the individual personally;

---

[3] The address listed by Plaintiff was 12864 Biscayne Blvd., Miami, FL, *see* ECF No.
1 at 4, and that was, indeed, the address where the USMS attempted to serve
Defendants Feldman and Pickens.

(B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or

(C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. P. 4(e).

It is clear that Defendants Pickens and Feldman were not personally served with a copy of the summons and complaint.  It is also clear that copies of the summons and complaint were not left at the residences of either of those Defendants.  The only evidence is that the service documents were sent by email from a deputy marshal to an employee of JPay.  In fairness to the USMS, Strickland provided an email address where copies of the papers could be sent.  Deputy U.S. Marshals are not usually attorneys who study and interpret the Rules of Civil Procedure.  It was not unreasonable for the Deputy to act in accordance with the instructions provided by a person identified as a "legal specialist" for JPay, nor was it unreasonable to consider the information provided as an agreement to accept service.

However, even if the employee/legal specialist was authorized to receive service of process, Rule 4(e) requires "delivery" of the complaint

and summons.  Fed. R. Civ. P. 4(e)(2)(C).  Sending copies of a complaint
and summons via e-mail is not "delivery" and "does not constitute proper
service of process under either Florida or federal law."  Johnson v.
Wellborn, 418 F. App'x 809, 815 (11th Cir. 2011).  Therefore, service of
process was not valid for either Defendant Pickens or Feldman, and
because it was not valid, the motion to quash, ECF No. 23, should be
granted.

In reaching that conclusion, however, it is apparent that the failure in
service of process was not Plaintiff's fault.  The USMS was directed to
serve process on the Defendants on Plaintiff's behalf, and Plaintiff should
not be penalized for the deficient service.  Accordingly, although the motion
to quash should be granted, it is recommended that this case be remanded
and additional time provided for service to properly be carried out on
Defendants Feldman and Pickens.

Rule 4(m) provides that service must be carried out within 90 days.
However, the Rules state that "if the plaintiff shows good cause for the
failure, the court must extend the time for service for an appropriate
period."  Fed. R. Civ. P. 4(m).  Good cause has been shown as Plaintiff

was not responsible for the failed service attempt.  A 60-day extension of

time should be provided for additional service efforts to be carried out.

**Motion to Dismiss, ECF No. 26**

Defendants Dixon and Inch filed a motion to dismiss, ECF No. 26,

raising eight reasons the complaint should be dismissed.  Plaintiff has

responded to the motion.  ECF No. 29.  His response clarifies that he did

not allege a conspiracy claim against Defendant Dixon, *id.* at 4, and

clarifies his request for monetary damages against Defendant Dixon, *id.* at

5, but otherwise opposes the motion to dismiss.  *Id.*

**Allegations of the Complaint, ECF No. 1**

Plaintiff is serving a life sentence in the Florida Department of

Corrections [FDOC], and says that both he and "FDOC expect him to die in

prison."  ECF No. 1 at 9.  In August 2018, Plaintiff's family purchased him a

multimedia tablet from JPay (not a party in this case).[4]  ECF No. 1 at 8-9.

In late 2020, however, the FDOC required inmates to surrender their

purchased JP5 tablets which would now be deemed "contraband."  In

exchange, inmates were provided a new, and free, JP6 multimedia tablet.

---

[4] Although the usual tablet price was $129.99, Plaintiff's family purchased the tablet at a 50% discounted price ($69.86).  The discount was offered to those who purchased the tablet within the first 60 days.  ECF No. 1 at 8-9.

*Id.* at 9.  Plaintiff apparently surrendered his JP5 tablet on an unknown date.  *Id.*  It appears that after Plaintiff surrendered his tablet, the FDOC rescinded the requirement that inmates had to relinquish their previously purchased tablets.  *Id.*  However, if an inmate had already surrendered the tablet, it would not be returned.  *Id.*

Plaintiff asserts that FDOC violated the Takings Clause of the Fifth Amendment.  ECF No. 1 at 12.  He also brings a Substantive Due Process claim against the FDOC.  *Id.* at 13.  Furthermore, he claims "Defendants Inch, Feldman & Pickens conspired to deprive Plaintiff of his Fifth (Takings Clause) & Fourteenth (Substantive Due Process Clause) Amendment rights secured by the U.S. Constitution."  *Id.*

**Standard of Review**

The issue on whether a complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failing to state a claim upon which relief can be granted is whether the plaintiff has alleged enough plausible facts to support the claim stated.  <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 127 S.Ct. 1955, 167 L. Ed. 2d 929 (2007).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  <u>Ashcroft v. Iqbal</u>, 556 U.S.

662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting <u>Twombly</u>,

550 U.S. at 570, 127 S. Ct. 1955).[5]  "A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged."  <u>Iqbal</u>,

556 U.S. at 678, 129 S. Ct. at 1949 (citing <u>Twombly</u>, 550 U.S. at 556, 127

S. Ct. at 1965); *see also* <u>Wilborn v. Jones</u>, 761 F. App'x 908, 910 (11th Cir.

2019).  "The plausibility standard" is not the same as a "probability

requirement," and "asks for more than a sheer possibility that a defendant

has acted unlawfully."  <u>Iqbal</u>, 556 U.S. at 677 (quoting <u>Twombly</u>, 550 U.S.

at 556).  A complaint that "pleads facts that are 'merely consistent with' a

defendant's liability," falls "short of the line between possibility and

plausibility."  <u>Iqbal</u>, 129 556 U.S. at 677 (quoting <u>Twombly</u>, 550 U.S. at

557).

The pleading standard is not heightened, but flexible, in line with Rule

8's command to simply give fair notice to the defendant of the plaintiff's

claim and the grounds upon which it rests.  <u>Swierkiewicz v. Sorema</u>, 534

---

[5] The complaint's allegations must be accepted as true when ruling on a motion to dismiss, <u>Oladeinde v. City of Birmingham</u>, 963 F.2d 1481, 1485 (11th Cir. 1992), *cert. denied*, 113 S. Ct. 1586 (1993), and dismissal is not permissible because of "a judge's disbelief of a complaint's factual allegations."  <u>Twombly</u>, 127 S. Ct. at 1965, (quoting <u>Neitzke v. Williams</u>, 490 U.S. 319, 327, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989)).

U.S. 506, 122 S. Ct. 992, 998, 152 L. Ed. 2d 1 (2002) ("Rule 8(a)'s

simplified pleading standard applies to all civil actions, with limited

exceptions.").  Pro se complaints are held to less stringent standards than

those drafted by an attorney.  <u>Wright v. Newsome</u>, 795 F.2d 964, 967 (11th

Cir. 1986) (citing <u>Haines v. Kerner</u>, 404 U.S. 519, 520-521, 92 S. Ct. 594,

596, 30 L. Ed. 2d 652 (1972)).  Nevertheless, a complaint must provide

sufficient notice of the claim and the grounds upon which it rests so that a

"largely groundless claim" does not proceed through discovery and "take

up the time of a number of other people . . . ."  <u>Dura Pharmaceuticals, Inc.</u>

<u>v. Broudo</u>, 544 U.S. 336, 125 S. Ct. 1627, 161 L. Ed. 2d 577 (2005)

(quoted in <u>Twombly</u>, 550 U.S. at 558).

**Analysis**

**1.    Takings Clause Claim**

Defendants first argue that the complaint is insufficient because

Plaintiff does not allege that his property was taken by the Defendants.

ECF No. 26 at 5.  Notwithstanding, Defendants contend that even if Plaintiff

intended to allege "that Defendants took his JP5 tablet, Plaintiff does not

also allege that the tablet was seized for public use."  *Id.* at 6.

"The Takings Clause of the Fifth Amendment states that "private property [shall not] be taken for public use, without just compensation." Knick v. Twp. of Scott, Pennsylvania, 204 L. Ed. 2d 558, 139 S. Ct. 2162, 2167 (2019); *see also* Brown v. Legal Found. of Washington, 538 U.S. 216, 231–32, 123 S. Ct. 1406, 1417, 155 L. Ed. 2d 376 (2003) (noting that a State has "authority to confiscate private property" but "the Fifth Amendment imposes two conditions on the exercise of such authority: the taking must be for a 'public use' and 'just compensation' must be paid to the owner").  It does not matter whether the property taken is "real or personal," people do not expect their property to be taken away.  Cedar Point Nursery v. Hassid, 210 L. Ed. 2d 369, 141 S. Ct. 2063, 2074 (2021) (citing to Horne v. Dep't of Agric., 576 U.S. 350, 361, 135 S. Ct. 2419, 2427, 192 L. Ed. 2d 388 (2015)).

First, Plaintiff's complaint raised a "Takings Clause" claim under the Fifth Amendment.  ECF No. 1 at 12.  A Fifth Amendment "Takings Clause" claim would be applicable to federal officials, not state officials.  Here, Defendants Inch and Dixon are state actors.  Nevertheless, the Supreme Court has made clear that the Takings Clause of the Fifth Amendment is made "applicable to the States through the Fourteenth Amendment."

Cedar Point Nursery v. Hassid, 594 U.S. 139, 147, 141 S. Ct. 2063, 2071, 210 L. Ed. 2d 369 (2021); *see also* Murr v. Wisconsin, 198 L. Ed. 2d 497, 137 S. Ct. 1933, 1942 (2017) ("The Clause is made applicable to the States through the Fourteenth Amendment").  Considering that Plaintiff is a pro se prisoner, his claim will be considered as though properly alleged under the Fourteenth Amendment.

Second, Plaintiff asserted this claim against the "FDOC," not against Defendants Inch or Dixon personally, *see* ECF No. 1 at 12, and not against Defendants Feldman or Pickens.  Moreover, Plaintiff sued Defendant Dixon in his official capacity only, *id.* at 3, and stated that "[b]ecause Secretary Dixon is sued in his official capacity," he would refer to him "as FDOC for ease of reference."  *See* ECF No. 1 at 7.  Thus, the "Takings Clause" claim is brought against Defendant Dixon only as Secretary of the FDOC. Indeed, an official-capacity suit generally represents "only another way of pleading an action against an entity of which an officer is an agent." Kentucky v. Graham, 473 U.S. 159, 165-66, 105 S. Ct. 3099, 3105, 87 L. Ed. 2d 114 (1985) (citations omitted).

Third, although the motion to dismiss argues that the complaint fails to allege that Plaintiff's JP5 tablet was taken by the Defendants, *see* ECF

No. 26 at 5, Plaintiff alleged that the FDOC posted a notice in November 2020 which informed Plaintiff that he could "sign-up" to receive a free JP6 multimedia tablet.  ECF No. 1 at 9.  Plaintiff said the notice was not "a request or option, but rather, an order," and that after that time, his previously "purchased JP5 tablet would be considered contraband & confiscated."  *Id.*

Plaintiff's allegation, which must be accepted as true, makes clear that Defendant Dixon, as FDOC Secretary, created a policy which required Plaintiff' tablet to be surrendered.  In other words, Defendant Dixon took Plaintiff's tablet because, although Plaintiff surrendered his JP5 tablet, it was not voluntary.  Indeed, if Plaintiff had retained his tablet in violation of the notice, Plaintiff would potentially face disciplinary action for possessing contraband.  It is accepted for present purposes that a taking occurred.

Defendant is correct, however, that Plaintiff does not allege that his "tablet was seized for public use."  ECF No. 26 at 6.  He alleged only that retaining the tablet would be considered contraband.  *Id.*  In response to the motion to dismiss, Plaintiff argues that the confiscation of his tablet means it "left the private realm of his possession & entered into the FDOC's public realm, regardless of whether or not Plaintiff alleged any

specific 'public use' by Defendants."  ECF No. 29 at 2.  He contends the

Defendant "used strong arm extortion tactics to force" him to surrender his

tablet, and that the rules permit him to possess only one tablet.  ECF No.

29 at 2-3.

Pursuant to well established case law, the "Takings Clause does not

require compensation unless private property has been taken 'for public

use.'" U.S. CONST. AMEND. V. (cited in Support Working Animals, Inc. v.

DeSantis, 457 F. Supp. 3d 1193, 1215 (N.D. Fla. 2020)).  It is also

"well-settled that there is no taking for 'public use' where the government

acts pursuant to its police power."  Support Working Animals, 457 F. Supp.

3d at 1215 (citing to Keystone Bituminous Coal Ass'n v. DeBenedictis, 480

U.S. 470, 491, 107 S. Ct. 1232, 94 L. Ed. 2d 472 (1987) ("'[A]ll property in

this country is held under the implied obligation that the owner's use of it

shall not be injurious to the community,' and the Takings Clause did not

transform that principle to one that requires compensation whenever the

State asserts its power to enforce it.") (citation omitted); *see also* Goldblatt

v. Town of Hempstead, 369 U.S. 590, 592, 82 S.Ct. 987, 8 L.Ed.2d 130

(1962) ("If this ordinance is otherwise a valid exercise of the town's police

powers, the fact that it deprives the property of its most beneficial use does not render it unconstitutional").

Here, Plaintiff did not allege any facts to demonstrate that his tablet was "taken for public use." Nothing was presented to support a finding that the loss of Plaintiff's property was for a public purpose. Instead, the complaint indicates that the purpose of the new policy was to "provide the entire Florida prison population with a 'FREE' tablet . . . to combat introduction of contraband, drugs, etc." ECF No. 1 at 9-10.[6]

On these facts, it is concluded that the surrender of Plaintiff's tablet was not for a "public use" and is not a "taking" in violation of the Constitution. *See* <u>Moretto v. Securus Techs.</u>, No. 2:23-CV-881-SPC-NPM, 2024 WL 167259, at *1 (M.D. Fla. Jan. 16, 2024) ("Even assuming arguendo that the defendants performed a governmental function in relation to the tablet, it remains clear they have not taken Moretto's property for public use"); <u>Peterka v. Dixon</u>, No. 4:23cv55-MW-MAF, 2023 WL 7272116, at *2 (N.D. Fla. Oct. 10, 2023), report and recommendation adopted, No. 4:23cv55-MW/MAF, 2023 WL 7182114 (N.D. Fla. Nov. 1,

---

[6] It also appears that through the use of the new multimedia tablets, inmates can receive "digital mail" which is scanned to the tablets. That would appear to be a benefit.

2023) (dismissing "Takings Clause" claim as prisoner alleged that his JP5 tablet "was required to be surrendered because of a DOC rule, [but] he did not allege that his property was not taken for 'public use'").

Furthermore, the declaration that possessing a second tablet is "contraband" does not violate the Constitution either.  The fact is that prisoners have "no property right protected by the Fourteenth Amendment to possess contraband while in prison."  Russell v. Butler, No. 2:20-CV-634-WKW-JTA, 2023 WL 3070930, at *4 (M.D. Ala. Mar. 24, 2023), report and recommendation adopted, No. 1:20-CV-634- WKW, 2023 WL 3065209 (M.D. Ala. Apr. 24, 2023) (citing to Harris v. Forsyth, 735 F.2d 1235 (11th Cir. 1984) (holding that confiscation of a prisoner's money, pursuant to a rule forbidding prisoners to possess money, did not constitute an unconstitutional deprivation of property in violation of § 1983)).  A state prison system lawfully may declare what property is permissible to possess and what property is not permissible.  The "law is well established that a state has 'a compelling interest in maintaining security and order in its prisons and, to the extent that it furthers this interest in reasonable and non-arbitrary ways, property claims by inmates must give way.'"  Sullivan v. Ford, 609 F.2d 197 (5th Cir.1980) (quoted in Harris, 735 F.2d at 1235)).

Case No. 4:23cv396-AW-MAF

Plaintiff acknowledged that the tablet policy is related to a security interest in combating the introduction of contraband.  Accordingly, for all these reasons, the Takings Clause claim brought against Defendant Dixon should be dismissed.

## 2.    Qualified immunity

The motion to dismiss argues that Defendant Inch is entitled to qualified immunity for the Takings Clause claim.  ECF No. 26 at 6.  There is no need to evaluate this argument, however, because Plaintiff did not assert a Takings Claim against Defendant Inch.  As noted above, it was presented only against Defendant Dixon as Secretary of the FDOC.  *See* ECF No. 1 at 12.  Thus, Defendant Inch need not assert qualified immunity because he is not alleged to have violated the Takings Clause.

## 3.    Substantive Due Process Claim

Defendants argue that Plaintiff fails to state a claim for a Substantive Due Process violation for two reasons: he did not allege sufficient facts to support such a claim and Defendant Inch is entitled to qualified immunity.  Considering the last reason first, Plaintiff did not allege that Defendant Inch violated his substantive due process rights.  Plaintiff claimed only that

"FDOC violated the Substantive Due Process Clause."  Accordingly, there is no need to address qualified immunity as to this claim either.

Additionally, the first argument need not be addressed because the claim is subsumed in the Takings Clause claim.  "Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims.'"   County of Sacramento v. Lewis, 523 U.S. 833, 842, 118 S. Ct. 1708, 140 L. Ed. 2d 1043 (1998) (alteration omitted) (quoting Albright v. Oliver, 510 U.S. 266, 273, 114 S. Ct. 807, 127 L. Ed. 2d 114 (1994) (four-Justice plurality opinion)); *see also* Graham v. Connor, 490 U.S. 386, 395, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989)); Bickerstaff Clay Prod. Co. v. Harris Cnty., Ga. By & Through Bd. of Comm'rs, 89 F.3d 1481, 1490 (11th Cir. 1996) (holding that substantive due process claim was subsumed in the "Takings Clause").  Because the Takings Clause is a specific Constitutional Amendment that addresses Plaintiff's claim, considering the identical claim under a substantive due process analysis is not appropriate.

Case No. 4:23cv396-AW-MAF

Another deficiency with this claim is that the Supreme Court has "held for many years (logically or not) that the 'liberties' protected by substantive due process do not include economic liberties." Stop the Beach Renourishment, Inc. v. Fla. Dep't of Env't Prot., 560 U.S. 702, 721, 130 S. Ct. 2592, 2606, 177 L. Ed. 2d 184 (2010). Plaintiff's substantive due process claim is based on the same facts which support his Takings Clause claim; thus, it is entirely based on economic loss. This claim is insufficient as a matter of law and should be dismissed.

## 4.   Conspiracy Claim

Defendants argue that Plaintiff's conspiracy claim must be dismissed because Plaintiff failed to state a § 1985 conspiracy claim against the Defendants and because Defendant Inch is entitled to qualified immunity. ECF No. 26 at 14. In response, Plaintiff points out that he has not alleged a conspiracy claim against Defendant Dixon. ECF No. 29 at 4. The claim was brought only as to Defendants Inch, Feldman, and Pickens.[7]

---

[7] As a matter of clarity, this argument is addressed only as to Defendant Inch and not as to claims brought against Defendants Feldman and Pickens since they filed a motion to quash. "Proper service of process is a jurisdictional requirement; 'a court lacks jurisdiction over ... a defendant when that defendant has not been served.'" Pardazi v. Cullman Med. Ctr., 896 F.2d 1313, 1317 (11th Cir. 1990) (quoted in Simon v. Leevers Supermarkets, Inc., No. 20-60721-CIV, 2020 WL 13310332, at *2 (S.D. Fla. July 6, 2020)).

Since there is no need to address qualified immunity if the complaint fails to allege a conspiracy claim, that argument is considered first.  The motion to dismiss contends that Plaintiff's conspiracy claim is insufficient because he did not "allege any agreement" between Defendant Inch and the other Defendants.  ECF No. 26 at 15.  Plaintiff did not respond to that argument.

Notably, Plaintiff brought his conspiracy claim without citing to the basis for that claim.  It is possible to bring a conspiracy claim under either 42 U.S.C. § 1985 or 42 U.S.C. § 1983.  Kearson v. S. Bell Tel. & Tel. Co., 763 F.2d 405, 407 (11th Cir. 1985) (noting that § 1983 is the statute "which provides remedies for conspiracies to interfere with certain civil rights"); Grider v. City of Auburn, Ala., 618 F.3d 1240, 1260 (11th Cir. 2010) (stating that a "plaintiff may state a § 1983 claim for conspiracy to violate constitutional rights by showing a conspiracy existed that resulted in the actual denial of some underlying constitutional right"); see also Spadaro v. City of Miramar, 855 F. Supp. 2d 1317, 1346 (S.D. Fla. 2012) (quoting Grider).

Nevertheless, whichever statute Plaintiff intended to sue under is

somewhat immaterial[8] because under either statute, a conspiracy claim

requires a plaintiff to "show that the parties reached an understanding."

Bailey v. Bd. of Cty. Comm'rs of Alachua Cty., Fla., 956 F.2d 1112, 1122

(11th Cir. 1992) (internal quotation marks and citation omitted).  "The

complaint must inform the defendants 'of the nature of the conspiracy

which is alleged. It is not enough to simply aver in the complaint that a

conspiracy existed.'" Fullman v. Graddick, 739 F.2d 553, 557 (11th Cir.

1984) (quoted in Wilk v. St. Lucie Cnty. Fla. Sheriff Off., 740 F. App'x 658,

663 (11th Cir. 2018)).

In this case, Plaintiff presented only two allegations to support this

claim, and both were conclusory.  Plaintiff alleged that Defendants Inch,

Feldman, and Pickens "were busy conspiring on ways to off-set any losses

incurred" from the termination of the digital music player program and

introduction of the new multimedia tablet program.  ECF No. 1 at 8.  He

additionally alleged that delay in providing free tablets to prisoners was

---

[8] If Plaintiff intended to pursue a claim of conspiracy under section 1985, it would be insufficient as a matter of law.  A § 1985 conspiracy claim "must allege that 'the conspirators were motivated by ... racial, or otherwise class-based, invidiously discriminatory intent.'" Almon v. Sandlin, 603 F.2d 503, 505 (5th Cir.1979) (quoted in Kearson, 763 F.2d at 407).  There are no allegations of racial discrimination.

because Defendants Inch, Feldman, and Pickens had a "sophisticated conspiracy" to off-set "losses incurred by lawsuits initiated for the theft of millions of dollars associated with the termination of its digital music play program by initially selling the multimedia tablets to prisoners." *Id.* at 10. Those are vague conclusions that are unsupported by facts.

"In civil rights and conspiracy actions, conclusory, vague, and general allegations of conspiracy may justify dismissal of a complaint." Kearson, 763 F.2d at 407 (quoted in Wilk, 740 F. App'x at 664). Without any factual allegations to show how and when the Defendants "reached an understanding," the claim is insufficient on its face. Bailey, 956 F.2d at 1122; Wilk, 740 F. App'x at 664. Because Plaintiff's complaint failed to present the required factual basis to support his conspiracy claim, Defendants' motion to dismiss that claim should be granted.

No other claims remain against Defendants Inch or Dixon. It is, therefore, unnecessary to address the additional arguments presented in the motion to dismiss concerning Eleventh Amendment immunity,[9] that compensatory damages are barred by § 1997e(e), punitive damages are

---

[9] Notably, the Eleventh Amendment would not bar Plaintiff's request for monetary damages because Plaintiff only sought monetary relief from Defendants Inch, Feldman, and Pickens and those were individual capacity claims only. ECF No. 1 at 14.

barred by 18 U.S.C. § 3626, and Plaintiff is not entitled to injunctive or declaratory relief.  ECF No. 26.

## **RECOMMENDATION**

It is respectfully **RECOMMENDED** that the motion to quash service of process, ECF No. 23, be **GRANTED**, but that this case be **REMANDED** and an additional 60-days be provided to complete service of process on Defendants Feldman and Pickens.  It is further **RECOMMENDED** that the motion to dismiss, ECF No. 26, be **GRANTED** and Plaintiff's claims against Defendants Inch and Dixon be **DISMISSED** for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2).

**IN CHAMBERS** at Tallahassee, Florida, on March 21, 2024.


 S/     Martin A. Fitzpatrick
**MARTIN A. FITZPATRICK**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2). A copy of the objections shall be served upon all other parties. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b)(2). <u>Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control.</u> If a party fails to object to the Magistrate Judge's findings or recommendations as to any particular claim or issue contained in this Report and Recommendation, that party waives the right to challenge on appeal the District Court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.